IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01726-MSK

ROSCOE FORD,

     Petitioner,

v.

TRAVIS TRANI, Warden, L.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

THIS MATTER comes before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") (#2) filed by *pro se* Petitioner Roscoe Ford. Respondents have filed an Answer (#24), and Petitioner has filed a Traverse (#29). After reviewing the pertinent portions of the record in this case including the Petition, the Answer, the Traverse, and the state court record, the Court **FINDS** and **CONCLUDES** that the Petition should be denied.

### I. Background

Petitioner is challenging the validity of his conviction in Denver District Court case number 97CR4477. His first trial ended in a mistrial. Following a second trial, Petitioner was convicted by a jury of aggravated robbery and he was adjudicated to be an habitual criminal. He was sentenced to life in prison. According to the Colorado Court of Appeals on Petitioner's direct appeal,

> [Petitioner's] convictions resulted from the armed robbery

of a Safeway store. The robber entered the line at the store's customer service counter and put on a pair of sunglasses. When he reached the front of the line, he placed a brown paper bag on the counter, lifted his T-shirt to reveal a gun in the waistband of his pants, and ordered one of the two clerks on duty to fill the bag with money.

A third clerk followed the robber into the parking lot after the robbery. The robber ordered the clerk to stop, fired a gunshot into the air, and fled in a maroon car driven by a black female.

The day after the robbery, one of the customer service clerks viewed a photo lineup from which she identified [Petitioner] as the robber. This clerk, who had seen the robber without his sunglasses, noticed that he had a "strange, lazy, blind" eye that was "very noticeable." [Petitioner] is blind in his right eye.

The other customer service clerk, who had not seen the robber without sunglasses, was unable to make a positive identification after viewing the lineup. The clerk who followed the robber into the parking lot also failed to identify him.

During their investigation, police learned that a man resembling the robber had eaten a meal in a nearby pizza shop around the time the robbery occurred. The employee who served the man identified [Petitioner] as the customer.

Police arrested [Petitioner] in a motel parking lot six days after the robbery, as he stood beside a maroon car that belonged to his female companion. The female informed police that she was the driver of the getaway car in the Safeway robbery.

The driver of the getaway car, who traveled to [Petitioner's] trial from her home in Massachusetts, received use immunity for her testimony. She testified that she drove [Petitioner] to the Safeway store with the understanding that he would pick up a job application. [Petitioner] returned to the car after twenty minutes with a bag concealed in his coat. He was agitated and told the witness to "[h]urry and drive." The driver admitted on cross-examination that, when the robbery occurred, she was a crack addict and on probation for possessing drug paraphernalia.

In addition to the driver's testimony, the prosecution

> presented evidence of a similar robbery that occurred at another
> Safeway approximately eight months before the crime charged.
> On that occasion, a man wearing sunglasses placed a brown paper
> bag and a bank deposit slip on the customer service counter,
> opened his jacket to reveal a gun in the waistband of his pants, and
> threatened to shoot the clerk if he did not fill the bag with money.
> The clerk later picked [Petitioner] as the robber from a photo
> lineup.  A witness in the parking lot took down the license plate
> number of the car in which the robber escaped.  The car belonged
> to [Petitioner's] mother, who had loaned it to [Petitioner] when the
> robbery occurred.  When police searched the car a week after the
> robbery, they found clothing similar to that worn by the robber, as
> well as bank deposit slips identical to the one the robber placed on
> the counter.
>
> [Petitioner's] first trial resulted in a mistrial when the jury
> failed to reach a verdict.  At his second trial, the driver of the
> getaway car was declared unavailable when the prosecution could
> not find her, and her prior testimony was read to the jury over
> [Petitioner's] objection.
>
> [Petitioner] was found guilty after the second trial and
> sentenced to life imprisonment.  The trial court rejected his
> contention that the murder conviction underlying the habitual
> criminal charge was constitutionally infirm.  This appeal followed.

*People v. Ford*, No. 99CA2072 (Colo. App. Aug. 23, 2001) (#9-2 at 3-5) (unpublished).  The

judgment of conviction was affirmed on direct appeal.  *See id*.  On March 11, 2002, the Colorado

Supreme Court denied Petitioner's petition for writ of certiorari on direct appeal.  (*See* #9-3.)

Following his direct appeal, Petitioner filed a postconviction Rule 35(c) motion raising a

number of issues that was denied by the trial court.  On appeal from the denial of postconviction

relief, the Colorado Court of Appeals affirmed in part, reversed in part, and remanded for further

proceedings on the following three issues: (1) whether appellate counsel was ineffective for

failing to challenge on direct appeal the trial court's denial of two challenges for cause and the

trial court's admission of evidence of prior acts; (2) whether the trial court properly denied

Petitioner's challenges for cause; and (3) alleged misconduct by the prosecution.  *See People v. Ford*, No. 03CA0324 (Colo. App. Oct. 28, 2004) (#9-6) (unpublished).

On remand, the trial court denied Petitioner's motion for a special prosecutor and again concluded that he was not entitled to postconviction relief.  Petitioner filed another appeal and the trial court's orders were affirmed by the Colorado Court of Appeals.  *See People v. Ford*, No. 07CA0476 (Colo. App. Nov. 20, 2008) (#9-9) (unpublished).  On September 21, 2009, the Colorado Supreme Court denied Petitioner's petition for writ of certiorari in the postconviction proceedings.  (*See* #12-1.)

The Petition was filed on July 21, 2009.  Petitioner asserts the following eleven claims for relief:

1.  The prosecution committed misconduct and violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding evidence that the getaway driver was arrested for felony theft.

2.  Petitioner's right to confront witnesses was violated when the getaway driver's testimony from the first trial was read into the record at the second trial.

3.  Petitioner's right to a fair trial was violated when he was prevented by the trial court from introducing evidence of the getaway driver's pending felony theft charge.

4.  Petitioner's right to a fair trial was violated when he was prevented by the trial court from introducing expert testimony regarding the inherent unreliability of eyewitness identification.

5.  Petitioner's right to counsel was violated when counsel was not allowed to be present during a video line-up.

6.  Petitioner's adjudication as an habitual criminal violates his constitutional rights because one of the prior convictions used to support that adjudication was obtained in violation of his constitutional rights.

7.  The prosecution committed misconduct by preventing the getaway driver from testifying at Petitioner's second trial.

8.    Counsel on direct appeal was ineffective by failing to raise a *Batson* claim.

9.    Counsel on direct appeal was ineffective by failing to raise a claim that the trial court abused its discretion in denying two challenges for cause.

10.   Counsel on direct appeal was ineffective by failing to challenge the trial court's admission of prior act evidence.[1]

11.   Petitioner was denied a fair trial when the trial court refused to appoint a special prosecutor.

## II. Legal Standards

The Court must construe the Petition and other papers filed by Petitioner liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. For the reasons stated below, the Court finds that Petitioner is not entitled to any relief.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Petitioner bears the burden of proof under § 2254(d). *See Woodford v.*

---

[1] Petitioner's tenth claim was not presented as an ineffective assistance of appellate counsel claim in the Petition. However, Petitioner clarified in a subsequent filing (#10 at 5) that he intended to assert the tenth claim is an ineffective assistance of appellate counsel claim and that is how Respondents have addressed the claim. The Court will do likewise.

*Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id*. at 784. Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 784-85. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 784. In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*.

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.

*See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the

holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the

relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in
> cases where the facts are at least closely-related or similar to the
> case *sub judice*.  Although the legal rule at issue need not have had
> its genesis in the closely-related or similar factual context, the
> Supreme Court must have expressly extended the legal rule to that
> context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal

law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that clearly

established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established
> federal law if: (a) "the state court applies a rule that contradicts the
> governing law set forth in Supreme Court cases"; or (b) "the state
> court confronts a set of facts that are materially indistinguishable
> from a decision of the Supreme Court and nevertheless arrives at a
> result different from [that] precedent."  *Maynard* [*v. Boone*], 468
> F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and
> brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word
> 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually
> opposed.'"  *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application
> of clearly established federal law when it identifies the correct
> governing legal rule from Supreme Court cases, but unreasonably
> applies it to the facts.  *Id*. at 407-08.  Additionally, we have
> recognized that an unreasonable application may occur if the state
> court either unreasonably extends, or unreasonably refuses to
> extend, a legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. §2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III. Analysis

**A.  Claim One**

Petitioner first claims that the prosecution committed misconduct and violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding evidence that the getaway driver was arrested for felony theft. Although Petitioner's factual allegations in support of this claim are not entirely

clear in the Petition, he clarifies in the Traverse that his first claim is premised on the prosecution's alleged failure to disclose to him the issuance of an arrest warrant for the getaway driver. (*See* #29 at 4.) Petitioner alleges that an arrest warrant for the getaway driver was issued on March 31, 1999, the same day she testified at Petitioner's first trial. According to the Colorado Court of Appeals, although an arrest warrant was issued for the getaway driver on March 31, 1999, the prosecution did not learn about the arrest warrant until April 2, 1999, the day of closing arguments in Petitioner's first trial. (*See* #9-2 at 6.)

Petitioner argues that the failure to disclose the existence of the arrest warrant was prejudicial because "while the prosecution did in fact disclose the information, it was not disclosed until [Petitioner's] case was in closing arguments and hence it could not be utilized during cross of [the getaway driver]." (#29 at 5.) According to Petitioner, there is a reasonable probability that he would have been acquitted if the existence of the arrest warrant had been disclosed to the defense in a timely manner because his first trial ended in a hung jury.

Suppression "of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. In order "to establish a *Brady* violation, a habeas petitioner must show that (1) the prosecutor suppressed evidence; (2) the evidence was favorable to the defendant as exculpatory or impeachment evidence; and (3) the evidence was material." *Knighton v. Mullin*, 293 F.3d 1165, 1172 (10th Cir. 2002) (internal quotation marks omitted).

Generally, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (internal quotation marks omitted). A reasonable

probability of a different result exists "when the government's evidentiary suppression undermines confidence in the outcome of the trial."  *Id.* at 434 (internal quotation marks omitted).  The question of materiality "must be evaluated in the context of the entire record."  *United States v. Agurs*, 427 U.S. 97, 112 (1976).  Therefore, rather than considering each piece of withheld evidence in isolation, the Court must

> "review the cumulative impact of the withheld evidence; its utility to the defense as well as its potentially damaging impact on the prosecution's case.  Furthermore, . . . [the Court] evaluate[s] the materiality of withheld evidence in light of the entire record in order to determine if the omitted evidence creates a reasonable doubt that did not otherwise exist.  What might be considered insignificant evidence in a strong case might suffice to disturb an already questionable verdict."

*Snow v. Sirmons*, 474 F.3d 693, 711 (10th Cir. 2007) (quoting *Banks v. Reynolds*, 54 F.3d 1508, 1518 (10th Cir. 1995)).

On direct appeal, the Colorado Court of Appeals cited *Brady* and rejected Petitioner's *Brady* claim based on its determination that "the evidence of the witness's outstanding arrest warrant was not material."  (#9-2 at 7.)  The Colorado Court of Appeals explained its reasoning as follows:

> Evidence of a prosecution witness's arrest is admissible for the limited purpose of showing the witness's bias or motive for the testimony.  In this case, however, the witness had not been arrested when she testified at [Petitioner's] first trial, and there is no evidence that either she or the prosecution knew about the arrest warrant until after her testimony was completed.
>
> Because neither the witness nor the prosecution learned of the arrest warrant until after the witness testified, there was no Brady material for the prosecution to disclose.  Under these circumstances, the trial court did not err by denying [Petitioner's] motion for discovery sanctions.

(#9-2 at 7 (citation omitted).)

The factual determination of the Colorado Court of Appeals that neither the prosecution nor the getaway driver was aware that an arrest warrant had been issued for the getaway driver until after she testified is presumed correct and Petitioner bears the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Court finds that Petitioner has not presented clear and convincing evidence to rebut the presumption of correctness in this action. In fact, Petitioner apparently concedes that the prosecution was not aware of the existence of the arrest warrant at the time the getaway driver testified because he argues only that the prosecution "had an obligation to have learned [sic] of the warrant." (#29 at 4.)

Therefore, the Court must consider the state court's rejection of Petitioner's *Brady* claim in light of the fact that neither the prosecution nor the getaway driver was aware that an arrest warrant had been issued for the getaway driver until after she testified. Under these circumstances, the state court's determination that no *Brady* violation occurred complies with federal law because the rule in *Brady* applies in three types of situations, each of which "involves the discovery, after trial of information which had been known to the prosecution but unknown to the defense." *Agurs*, 427 U.S. at 103. Because the prosecution did not know about the arrest warrant until after the getaway driver testified, that information could not have been disclosed to the defense prior to or at the time of her testimony.

Furthermore, the determination by the Colorado Court of Appeals that the information regarding the existence of the arrest warrant was not material also complies with federal law. Because the getaway driver did not know about the existence of the arrest warrant at the time she

testified, the fact that an arrest warrant had been issued could not have affected her testimony in any way.  Therefore, the Court finds that the rejection by the Colorado Court of Appeals of Petitioner's *Brady* claim is neither contrary to nor an unreasonable application of clearly established federal law.  As a result, the claim lacks merit.

**B.  Claim Two**

Petitioner next claims that his right to confront witnesses was violated when the getaway driver's testimony from the first trial was read into the record at the second trial.  The right of an accused to confront the witnesses against him is guaranteed by the Sixth Amendment to the United States Constitution and applies in both federal and state prosecutions.  *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

Petitioner's conviction under attack in this action became final prior to the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004).  Therefore, the Court must apply the clearly established law that existed prior to *Crawford*.

In *Ohio v. Roberts*, 448 U.S. 56 (1980), the Supreme Court held that an exception to the Confrontation Clause permits admission of prior testimony in a criminal trial if two conditions are met:  (1) the witness is shown to be unavailable, and (2) the witness's statement bears sufficient indicia of reliability.  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  With respect to unavailability, "the government must show it made a good-faith effort to obtain the witness's attendance at trial."  *Id*. at 832.  The reliability of the testimony at issue can be inferred

from the fact that the statement fell "within a firmly rooted hearsay exception" or established by "a showing of particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66. Petitioner challenges admission of the getaway driver's prior testimony under both the unavailability and reliability prongs.

The Colorado Court of Appeals addressed the unavailability prong on direct appeal as follows:

> In this case, the witness remained in Colorado after [Petitioner's] first trial and informed the prosecution that she would be living with her mother. The prosecution's efforts to locate the witness before the second trial included four visits to the mother's home. As of July 19, 1999, the day the second trial began, the mother had not seen the witness in two weeks. The prosecution also contacted the witness's son and employer, neither of whom knew her whereabouts. Jail checks and computer searches produced no leads. In light of these facts, the trial court did not abuse its discretion by finding the witness to be unavailable.
>
> [Petitioner] argues that the prosecution's attempts to find the witness were insufficient because it did not investigate whether she had returned to Massachusetts. We are not convinced. While the prosecution must make good faith efforts to produce its witnesses for trial, good faith may not require the use of all available means, especially if the available options appear to be futile or the witness is capable of frustrating efforts to compel his or her attendance. Here, the witness had announced her intention to live in Colorado, and she met with [Petitioner's] attorneys in Colorado a week before the second trial began. Under these circumstances, the prosecution's failure to search for her in Massachusetts does not demonstrate a lack of good faith.

(#9-2 at 8-9 (citation omitted).)

Petitioner's argument that the prosecution prevented the getaway driver from returning to testify is the subject of his seventh claim which, for the reasons discussed below in the context of that claim, lacks merit. Petitioner's remaining argument that the prosecution knew the getaway

driver was in another state and made no good faith effort to require her presence is conclusory and does not rebut the presumption of correctness that attaches to the factual findings of the Colorado Court of Appeals regarding the prosecution's efforts. Petitioner's conclusory argument regarding unavailability also does not demonstrate that the state court's ruling is either contrary to or an unreasonable application of clearly established federal law.

With respect to the reliability prong of the *Roberts* test, the Colorado Court of Appeals cited *Roberts* and determined that the getaway driver's "prior testimony was sufficiently reliable to be admitted at [Petitioner's] second trial" because Petitioner "was represented by counsel, who effectively cross-examined the witness" at his first trial. (#9-2 at 10.) Petitioner's reliance on *Lilly v. Virginia*, 527 U.S. 116 (1999), is misplaced because *Lilly* involved admission of an accomplice's statement without cross-examination. In the instant action, the testimony of the getaway driver at Petitioner's first trial was subject to cross-examination by Petitioner and the cross-examination portion of the prior testimony also was presented to the jury at Petitioner's second trial. Therefore, the Court finds that the rejection by the Colorado Court of Appeals of Petitioner's second claim was neither contrary to nor an unreasonable application of clearly established federal law. As a result, Petitioner's second claim is denied.

## C.  Claims Three and Four

Petitioner asserts two claims challenging the trial court's disallowance of certain evidence. He contends in claim three that his right to a fair trial was violated when he was prevented by the trial court from introducing evidence of the getaway driver's pending felony theft charge at his second trial. In claim four Petitioner contends that his right to a fair trial was violated when he was prevented by the trial court from introducing expert testimony regarding

the inherent unreliability of eyewitness identification.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted).  Of course,

> [w]hile the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Holmes v. South Carolina*, 547 U.S. 319, 326 (2006); *see also Crane*, 476 U.S. at 689-90 (stating that "the Constitution leaves to the judges who must make these decisions 'wide latitude' to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'").

When considering Petitioner's claims that are premised on evidentiary rulings made by the trial court, the Court must remain cognizant of the fact that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Therefore, "[h]abeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000); *see also Fox v. Ward*, 200 F.3d 1286, 1296-97 (10th Cir. 2000) (stating that, to justify habeas relief, a trial court's evidentiary

error must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process").  It bears noting that the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Dowling v. United States*, 493 U.S. 342, 352 (1990).

"[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint."  *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted).  The Court's "[i]nquiry into fundamental fairness requires examination of the entire proceedings."  *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

### 1.  Evidence of Pending Theft Charge (Claim Three)

Petitioner argued on direct appeal "that it was necessary to present evidence of the pending charge to demonstrate the witness's partiality toward the prosecution."  (#9-2 at 10-11.) He further argues in his Traverse that exclusion of this evidence was not harmless because the jury "had no way to assess [the getaway driver's] credibility as she did not testify at the second trial and instead her testimony was merely read into the record."  (#29 at 8-9.)  The Colorado Court of Appeals determined on direct appeal that the trial court did not err in refusing to let Petitioner call witnesses at his second trial to testify about the theft charge pending against the getaway driver "because the witness was neither arrested nor charged with theft until after she gave her testimony."  (#9-2 at 11.)

Based on the Court's review of the state court record and the entire proceedings, the Court concludes that exclusion of evidence of the getaway driver's felony theft charge did not

render the proceedings fundamentally unfair.  Petitioner fails to explain how the theft charge, which was not brought until after the getaway driver testified  could have affected her testimony. Petitioner's contention that "the jury should have been allowed to determine whether the pending felony theft charge was relevant when determining whether [the getaway driver] was credible as it had no other means to assess [her credibility]" (#29 at 9) is unpersuasive.  There was other evidence adduced at the first trial which pertained to her credibility at that time, including that she was addicted to crack cocaine and that she was on probation for possessing drug paraphernalia.  Both the direct and cross-examination of the witness at the first trial was read at the second trial.  Therefore, the Court finds that Petitioner's third claim for relief also lacks merit and must be denied.

### 2.  Expert Testimony (Claim Four)

Petitioner's fourth claim is premised on the trial court's ruling that prevented him from introducing expert testimony regarding the inherent unreliability of eyewitness identification. The Colorado Court of Appeals addressed this claim under state law on direct appeal and rejected the claim for the following reasons:

> Here, after considering [Petitioner's] offer of proof and an affidavit from his proposed expert, the trial court refused to permit the expert to testify.  The court reasoned that multiple witnesses had identified [Petitioner] as the robber, and the jurors at his trial would have an opportunity at trial to view the photo lineups that the police showed the witnesses.  Moreover, the prosecution's corroborating evidence – which included the getaway driver's testimony and the evidence of [Petitioner's] involvement in a similar robbery at a different Safeway – diminished the probative value of the expert testimony.  We therefore conclude that the trial court's decision to exclude the expert testimony was not an abuse of discretion.

(#9-2 at 12-13.)

Based on the Court's review of the state court record and the entire proceedings, this Court concludes that the exclusion of evidence about the unreliability of eyewitness identification did not render the proceedings fundamentally unfair.  It is clear that eyewitness identification was an important part of the prosecution's case against the Petitioner.  However, the Court agrees with the Colorado Court of Appeals that the probative value of the proffered expert testimony was diminished by the existence of testimony from multiple witnesses who identified Petitioner as well as the corroborating evidence from the getaway driver and Petitioner's involvement in a prior, similar robbery.  The Court also notes that defense counsel effectively cross-examined the eyewitnesses and that skillful cross-examination can provide an equally, if not more, effective tool for testing the reliability of an eyewitness at trial.  *See United States v. Rodriguez-Felix*, 450 F.3d 1117, 1125 (10th Cir. 2006).  In light of these circumstances, the Court finds that Petitioner is not entitled to relief on his fourth claim.

**D.  Claim Five**

Petitioner next claims that his right to counsel was violated when his counsel was not allowed to be present during a line-up.  Petitioner specifically alleges that, approximately one week after he was arrested, a police detective informed him that he would be placed in a lineup. Petitioner asserts that he was represented by counsel at that time and he asked to have counsel present during the lineup but his request was denied.  Petitioner further asserts that videotaped evidence of the lineup was presented to the jury at his first trial.  The Colorado Court of Appeals rejected this claim because "[n]othing in the record indicates that a videotaped lineup was admitted into evidence or even mentioned at [Petitioner's] second trial."  (#9-2 at 12.)

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  Under the Sixth Amendment, a defendant is entitled to the assistance of counsel at every critical stage of a criminal prosecution.  *Kirby v. Illinois*, 406 U.S. 682, 690 (1972).  "Critical stages are those steps of a criminal proceeding[] that hold significant consequences for the accused."  *United States v. Collins*, 430 F.3d 1260, 1264 (10th Cir. 2005) (citing *Bell v. Cone*, 535 U.S. 685, 695-96 (2002)).  "Thus, a defendant is entitled to counsel at any proceeding where an attorney's assistance may avoid the substantial prejudice that could otherwise result from the proceeding."  *Id.* (citing *Coleman v. Alabama*, 399 U.S. 1, 9 (1970)).  The Supreme Court has held that a postindictment pretrial lineup is a critical stage of a criminal prosecution.  *United States v. Wade*, 388 U.S. 218, 236-37 (1967).

Petitioner contends that he is entitled to relief on this claim without a showing of actual prejudice because he was denied counsel at a critical stage of the proceedings and that such denial constitutes a structural error.  The Court disagrees.

A structural error "is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself'" and structural errors occur in only a "very limited class of cases."  *Johnson v. United States*, 520 U.S. 461, 468 (1997) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)).  Errors that have been found to be structural errors include

> the total deprivation of the right to counsel at trial, a biased presiding judge, the systematic exclusion of members of the defendant's own race from a grand jury, the denial of the right to self-representation at trial, the denial of the right to a public trial, the denial of the right to have a district judge (rather than a magistrate judge) preside over jury selection, and a defective

reasonable doubt instruction.

*Malicoat v. Mullin*, 426 F.3d 1241, 1250 (10th Cir. 2005).

Some constitutional errors in trial proceedings can be harmless when viewed in light of the entire trial process. *See Fulminante*, 499 U.S. at 306. The reason for this is that "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark*, 478 U.S. 570, 579 (1986).

Here, the Petitioner was represented at trial. His complaint is that he did not have counsel available to him during a pretrial line-up. Assuming, without determining, that the Petitioner's constitutional right to have counsel present was violated, the record does not reveal that such violation was fundamental to the criminal process in this case. It was one of two line-ups, followed the Petitioner's detention and was not referred to in the second trial. *See Gilbert v. California*, 388 U.S. 263, 272-74 (1967) (applying harmless error review to a defendant's denial of counsel at a postindictment lineup).

Thus, the Court considers whether such constitutional deprivation prejudiced the Petitioner. "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard" in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Fry v. Pliler*, 551 U.S. 112, 121 (2007). Pursuant to *Brecht*, a constitutional error does not warrant habeas relief unless it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. If the evidence is balanced so evenly that the Court is in grave doubt about whether the error meets this standard, the Court

must hold that the error is not harmless.  *O'Neal v. McAninch*, 513 U.S. 432, 436-37 (1995).  The Court makes this harmless error determination based upon a review of the entire state court record.  *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

The Colorado Court of Appeals on direct appeal found nothing in the record that indicated that a videotaped lineup was admitted into evidence or even mentioned at Petitioner's second trial."  (#9-2 at 12.)  This determination is supported by the record.  Therefore, because it was not considered by the jury in the second trial, any imperfection of the line-up did not directly affect the trial process.

However, in fairness to the Petitioner, it appears that the prejudice he is concerned about is more subtle.  In his Traverse, he argues that "one cannot say how the witnesses in the case were ultimately affected by the video line-up and whether it was unduly suggestive and thus prejudicial when it was performed.  One simply cannot say, without evidentiary development, whether the line-up was prejudicial merely because it was not introduced at trial."  (#29 at 15.) Petitioner also contends that the victims were shown a photographs prior to the videotaped lineup and that he was the only person who appeared in both groupings.  (*See* #29 at 15, n.3.) Construing these statements most liberally, the Court understands the Petitioner to contend that the trial testimony of the victims was influenced by the lineups, one of which was constitutionally flawed.

The Court notes initially that this contention is unsupported by any evidence, and the Court is limited to the record before the state court.  *See Cullen*, 131 S. Ct. at 1398.  However, assuming that the videotaped lineup had some effect on the victims' recollection and ultimate trial testimony, it would be pure speculation to try to measure the effect of the single lineup as

compared to the effect of a myriad of other influences on the victims' recollections and testimony at the second trial. Thus, although it is hypothetically possible that the videotaped lineup had some effect on the victims' testimony at the second trial, there is insufficient evidence in this record to show prejudice to the Petitioner. As a result, the determination by the Colorado Court of Appeals that Petitioner suffered no prejudice as a result of being denied counsel at a pretrial lineup is not contrary to or an unreasonable application of clearly established federal law. Relief based on this claim is denied.

## E. Claim Six

Petitioner next contends that his adjudication as an habitual criminal violates his constitutional rights because one prior conviction upon which such determination was based was obtained in violation of his constitutional rights. The prior conviction was for a felony murder in the State of Missouri. The Petitioner contends that such conviction was obtained in violation of his right to effective and conflict-free counsel. In that case, he contends that the same attorney represented him and a co-defendant in separate trials. Petitioner maintains that the attorney could not present Petitioner's best defense because such defense was antagonistic to his co-defendant.

Generally, a petitioner is not free to challenge a prior conviction used to enhance a current sentence for which he seeks *habeas* relief. *See Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394 (2001). In *Lackawanna*, the Supreme Court held:

> that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced

> sentence through a petition under § 2254 on the ground that the
> prior conviction was unconstitutionally obtained.

*Id.* at 403-04 (citation omitted).

However, there are narrow exceptions to the general rule in *Lackawanna.* The first is when there was a failure to appoint counsel in the prior proceeding in violation of the Sixth Amendment. *See id.* at 404. That is not the situation complained of by the Petitioner.

A second exception exists when a petitioner cannot "be faulted for failing to obtain timely review of a constitutional claim." *Id.* at 405. Examples of such circumstances include when "a state court [has], without justification, refuse[d] to rule on a constitutional claim that has been properly presented to it" or when, "after the time for direct or collateral review has expired, a defendant [obtains] compelling evidence that he is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner." *Id.* at 405. Petitioner does not allege any facts to demonstrate that he was unable to or was prevented from obtaining review of the Missouri conviction, nor has he presented any compelling evidence that he is actually innocent. Therefore, the Court finds that Petitioner may not challenge his enhanced sentence in this action based on the contention that the prior Missouri conviction is invalid.

Even if Petitioner could challenge the validity of his prior Missouri conviction in this action, no relief could be obtained based upon his contention. At the time Petitioner was convicted, representation of multiple defendants did not constitute a  violation of the Sixth Amendment unless it gave rise to a conflict of interest." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his

24

lawyer's performance." *Id*. If an actual conflict is shown, prejudice is presumed. *Id*. at 349-50. However, "the possibility of conflict is insufficient to impugn a criminal conviction." *Id*. at 350. In the absence of special circumstances, "trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." *Id*. at 347. Therefore, "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id*. at 350.

"[D]efense counsel's performance was adversely affected by an actual conflict of interest if a specific and seemingly valid or genuine alternative strategy or tactic was available to defense counsel, but it was inherently in conflict with his duties to others or to his own personal interests." *United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir. 1990). It is Petitioner's burden to show specific instances in support of his contention that an actual conflict of interest existed. *See United States v. Martin*, 965 F.2d 839, 842 (10th Cir. 1992).

The Colorado Court of Appeals addressed this claim on direct appeal as follows:

> [Petitioner] argues that his conviction as a habitual offender must be reversed. According to him, the underlying 1971 Missouri murder conviction was unconstitutionally obtained because his trial attorney also represented his codefendant. We are not persuaded.
>
> A defendant's constitutional right to effective assistance of counsel may be violated when his or her attorney simultaneously represents a competing interest. A defendant who raises no objection to multiple representation at trial must show that an actual conflict existed. While a showing of actual prejudice is not required, a mere potential conflict of interest is insufficient to justify relief.
>
> At the hearing on the habitual criminal charge, [Petitioner] was unable to satisfy the trial court that a conflict of interest

> existed in the Missouri case.  The record supports the trial court's
> conclusion.  [Petitioner] and his codefendant had separate trials.
> Although both appealed, neither challenged their convictions on
> conflict of interest grounds.  <u>See</u> State v. Ford, 495 S.W.2d 408
> (Mo. 1973); Ford v. State, 530 S.W.2d 25 (Mo. Ct. App. 1975);
> <u>see also</u> State v. Mayfield, 506 S.W.2d 363 (Mo. 1974).  The only
> evidence presented on this point was [Petitioner's] own testimony,
> and the trial court found that he was not credible.  Thus, we
> conclude that [Petitioner's] habitual criminal conviction should
> stand.

(#9-2 at 13-14 (some citations omitted).)

As is apparent from this discussion, the Colorado Court of Appeals applied the proper

legal standard to this claim.  Furthermore, the state court factual determinations, including the

determinations that there was no actual conflict of interest and that Petitioner was not credible,

are presumed to be correct.  The Petitioner bears the burden of rebutting the presumption with

clear and convincing evidence, which he has not done.  *See* 28 U.S.C. § 2254(e)(1).  Therefore,

the Court finds that the rejection of this claim by the Colorado Court of Appeals is neither

contrary to nor an unreasonable application of clearly established federal law and relief on this

ground is denied.

**F.  Claim Seven**

Petitioner next claims that the prosecution committed misconduct by preventing the

getaway driver from testifying at Petitioner's second trial.  According to Petitioner, the getaway

driver did not attend the second trial

> because she had been informed by the prosecution and its agents
> that if she did she would receive an extraordinary [sic] large
> sentence for her felony theft charge (which was pending at the time
> of [Petitioner's] second trial).  This was done because it was [the
> getaway driver's] lack of credibility which caused [Petitioner's]
> first trial to end up in a mistrial.  The new criminal charges against
> [the getaway driver] would have further undermined the

26

> prosecution's case against [Petitioner], hence the prosecution
> wished to simply have [the getaway driver's] previous testimony
> read into the record in order that the jury be unable to assess
> credibility and so they wouldn't know of the pending felony theft
> charge.

(#2 at 8.)  In his Traverse, Petitioner further states:

> In the instant case, the crux of the issue was whether [the getaway
> driver] was prevented from returning to testify at [Petitioner's]
> second trial due to misinformation provided by the prosecution.
> Initially, the State court did not hold an evidentiary inquiry on this
> matter.  However, after initial appeal of the denial of [Petitioner's]
> 35(c) motion, the Colorado Court of Appeals remanded for an
> evidentiary hearing.  At the evidentiary hearing, along with the two
> previously submitted affidavits, [the getaway driver] testified that
> she was never informed about a second trial, that she had been
> staying with her mother in Denver and was easily located had
> anyone tried as the prosecution had her mother's contact
> information; and that she was specifically informed by someone
> from the District Attorney's Office that no further testimony would
> be needed.  Further, [the getaway driver] also testified and
> provided affidavits stating that she was using large amounts of
> drugs during the period of her testimony and thus would have had
> to have been told repeatedly to appear.  Nonetheless, even after all
> this sworn testimony, the State courts found no prosecutorial
> misconduct warranting any relief.

(#29 at 18 (citations omitted).)

Habeas relief is available for prosecutorial misconduct only when the misconduct is so

egregious that it renders the entire trial fundamentally unfair.  *See Donnelly v. DeChristoforo*,

416 U.S. 637, 645 (1974).  In order to determine whether prosecutorial misconduct rendered the

trial fundamentally unfair, the Court must consider "the totality of the circumstances, evaluating

the prosecutor's conduct in the context of the whole trial."  *Jackson v. Shanks*, 143 F.3d 1313,

1322 (10th Cir. 1998).

The Colorado Court of Appeals affirmed the rejection of Petitioner's prosecutorial

misconduct claim in Petitioner's second postconviction appeal because it was not supported by

the facts.

> At the hearing on remand, [the getaway driver] testified about her involvement in [Petitioner's] case, her interaction with the prosecution, and the reasons she did not testify at [Petitioner's] second trial.  Based on that testimony, the trial court found that she was in fact subpoenaed for proceedings following [Petitioner's] first jury trial, and was then ordered to appear for the rescheduled second trial.  A warrant for her arrest was issued when she failed to appear for the second trial.

> The trial court further found that [the getaway driver] had not wanted to appear, and had informed investigators and the court of her desire not to appear and to have the transcripts of her previous testimony used instead of her live testimony.  The court relied on [the getaway driver's] testimony to find that the prosecution had not instructed her not to return to court, and that it was her own decision not to appear.  Consequently, the court concluded that there was no prosecutorial misconduct.

> Because the record supports these findings, we conclude the trial court properly denied [Petitioner's] claim of prosecutorial misconduct.

(#9-9 at 5-6.)  In addition, as discussed above in the context of Petitioner's second claim for

relief, the Colorado Court of Appeals cited the following facts on Petitioner's direct appeal that

also are relevant to this issue:

> In this case, the witness remained in Colorado after [Petitioner's] first trial and informed the prosecution that she would be living with her mother.  The prosecution's efforts to locate the witness before the second trial included four visits to the mother's home.  As of July 19, 1999, the day the second trial began, the mother had not seen the witness in two weeks.  The prosecution also contacted the witness's son and employer, neither of whom knew her whereabouts.  Jail checks and computer searches produced no leads.

(#9-2 at 8-9.)

Once again, the factual determinations of the state courts are presumed to be correct,
absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1).  Although
Petitioner disagrees with these factual findings, he has not come forward with clear and
convincing evidence that would rebut them.  The trial court's factual findings that: 1) the
getaway driver did not want to testify; 2) the prosecution subpoenaed her to testify; 3) the
witness was ordered to appear at Petitioner's second trial; and 4) that the prosecution attempted
to contact her multiple times at her mother's home are supported by the state court record.
Based on these facts, the Court cannot conclude that there was prosecutorial misconduct.
Furthermore, the state court's rejection of Petitioner's prosecutorial misconduct claim is neither
contrary to nor an unreasonable application of clearly established federal law because
Petitioner's trial, as a whole, was not fundamentally unfair.  As a result, Petitioner's seventh
claim also is denied.

**Claims Eight, Nine, and Ten**

Petitioner next argues that his representation on direct appeal was ineffective.  Petitioner
specifically alleges that his appellate counsel failed to raise a *Batson* claim (claim eight), failed
to raise a claim that the trial court abused its discretion in denying two challenges for cause
(claim nine), and failed to challenge the trial court's admission of prior act evidence (claim ten).

When Petitioner was convicted the law was clear that a defendant has a right to effective
assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that his
legal assistance was ineffective, Petitioner must demonstrate both that counsel's performance fell
below an objective standard of reasonableness and that counsel's deficient performance resulted
in prejudice to his defense. *See id*. at 687.  "Judicial scrutiny of counsel's performance must be

highly deferential." *Id.* at 689.  There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.*  It is Petitioner's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.*  "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Petitioner's concern pertains to the failure to raise particular challenges on his direct appeal.

> A claim of appellate ineffectiveness can be based on counsel's failure to raise a particular issue on appeal, although it is difficult to show deficient performance under those circumstances because counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."

*Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).  Thus, in considering a claim that appellate counsel was ineffective by failing to raise an issue on appeal, the Court must look to the merits of the omitted issue. *See Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001).

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

*Cargle*, 317 F.3d at 1202.

Under the prejudice prong, Petitioner must establish "a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  In determining whether Petitioner has established prejudice, the Court must look at the totality of the evidence presented at trial and not just the evidence that is helpful to Petitioner.  *See Boyd*, 179 F.3d at 914.

In addition, ineffective assistance claims are often mixed questions of law and fact.  *See Strickland*, 466 U.S. at 698.  Conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief.  *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001).  If Petitioner fails to satisfy either prong of the *Strickland* test, relief based upon the ineffective assistance claim must be denied.  *See Strickland*, 466 U.S. at 697.

### 1. Batson (Claim Eight)

Petitioner's eighth claim is premised on appellate counsel's failure to assert error based upon *Batson v. Kentucky*, 476 U.S. 79 (1986).  In *Batson*, the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the prosecution from using peremptory challenges to exclude potential jurors on the basis of their race.  *Batson*, 476 U.S. at 86.  *Batson* established a three-part test to evaluate claims that a prosecutor used peremptory challenges in violation of the Equal Protection Clause.  First, a defendant must make a prima facie showing that a peremptory challenge was exercised on the basis of race.  *Id*. at 96-97. Second, if a prima facie showing is made under step one, the prosecution must offer a race-neutral basis for striking the juror in question.  *Id*. at 97-98.  Third, the trial court must determine whether the defendant has shown purposeful discrimination in light of the parties' submissions. *Id*. at 98.  "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never

shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam).

     Petitioner argues in his Traverse that

> the only other hispanic [sic] juror remaining (following removal
> for cause of the first), was removed when she made a comment
> that defense counsel [sic] name sounded familar [sic] and maybe
> she was the attorney who had represented her mother.  However,
> no further inquiry was made concerning this issue and instead she
> was removed through the use of a peremptory challenge rather
> than a challenge for cause.  This was then allowed to become a
> race neutral explanation, and none of the other requiste [sic]
> <u>Batson</u> issues were utilized by the State courts.

(#29 at 21-22.)

     Petitioner did not raise the *Batson* claim on direct appeal.  However, the Colorado Court

of Appeals considered and rejected the merits of Petitioner's *Batson* claim in the context of

Petitioner's first postconviction appeal from the denial of his Rule 35(c) motion.  (*See* #9-6.)

The Colorado Court of Appeals applied the proper standards from *Batson* in Petitioner's first

postconviction appeal and concluded that Petitioner was not entitled to an evidentiary hearing

because he failed to establish a prima facie case of racial discrimination.

> Here, [Petitioner] objected to the prosecutor's use of a fifth
> peremptory challenge to dismiss a Hispanic woman, the second
> Hispanic to be dismissed by the prosecution.  The prosecution
> noted, as to whether a prima facie showing had been made, that
> this woman mentioned she thought defense counsel had
> represented her mother at one time and defense counsel's name
> sounded familiar.  The trial court then denied the objection, noting
> that the use of the peremptory challenge did not "rise[] to the level
> where [the prosecutor must] give[] an explanation."

> The record indicates that both [Petitioner] and the
> challenged juror were members of cognizable racial groups and
> that [Petitioner] pointed this out to the court in his objection.
> However, [Petitioner's] objection was supported by these
> observations <u>only</u>; [Petitioner] failed to further address that these
> observations, as well as the facts of the situation generally, raised

> an inference of discrimination sufficient to satisfy the first step in a
> proper <u>Batson</u> challenge.
>
> We conclude that, given the circumstances of this case,
> simply pointing out the racial features of the struck juror, without
> more, is insufficient to raise an inference of discrimination.  <u>Cf.</u>
> United States v. Esparsen, 930 F.2d 1461, 1466 (10th Cir. 1991)
> (striking a single juror of defendant's race may not always be
> sufficient to establish a prima facie case; burden to establish prima
> facie case is on defendant).  As such, we perceive no error in the
> trial court's denial of [Petitioner's] <u>Batson</u> challenge.

(#9-6 at 10-11 (some alterations in original).)

This record makes no showing of a prima facie case of racial discrimination.  The

Petitioner relies solely on the prosecution's use of a peremptory challenge to strike one Hispanic

juror.  However, "[r]eference merely to the race of one excused venireman, without more, is

insufficient to raise an inference of discrimination."  *United States v. Stavroulakis*, 952 F.2d 686,

696 (2d Cir. 1992).  Thus, this Court finds that the reasoning of the Colorado Court of Appeals

complies with federal law.  There has been no showing that Petitioner's *Batson* claim had merit.

Therefore the failure to assert it would not constitute ineffective assistance by appellate counsel.

Relief based upon Petitioner's eighth claim is denied.

## 2.  Challenges for Cause (Claim Nine)

Petitioner's second ineffective assistance claim (claim nine) is premised on counsel's

failure to challenge the trial court's denial of two challenges for cause.  Petitioner describes the

factual basis for this claim as follows:

> Two separate jurors, were challenged for cause.  The first of these
> was a retired police officer who now worked in the criminal field
> as a consultant in the area of ballistics/fingerprints.  This juror
> knew the names of the police officers who would testify at
> [Petitioner's] trial and was known to have attended various
> meetings/banquets, etc., with them.  Moreover, this juror was still

> receiving payment in the form of pension payments from the police
> department who was charged with arresting [Petitioner].
>
> The second juror worked at the Safeway which [Petitioner] had
> allegedly robbed.  He also stated that he had concerns regarding
> the defense attorneys.  Nonetheless he was allowed to sit on the
> panel.

(#2 at 9.)  Petitioner contends in his Traverse that, because the trial court failed to follow state

law and remove these jurors for cause, he "was then required to utilize all his peremptory

challenges when removing these juror [sic] which should have been excused for cause" and he

was denied "a fair trial before an impartial jury."  (#29 at 23.)

Petitioner raised this ineffective assistance of counsel claim in his postconviction Rule

35(c) motion and the trial court denied relief.  In his first postconviction appeal, the Colorado

Court of Appeals reversed the trial court's order with respect to three issues, including this

claim, and remanded for an evidentiary hearing.  Following an evidentiary hearing on remand,

the trial court again rejected the claim in a detailed oral ruling.  Petitioner filed another appeal

and the Colorado Court of Appeals addressed the merits of this ineffective assistance of counsel

claim in Petitioner's second postconviction appeal.

In the second postconviction appeal, the Colorado Court of Appeals initially concluded

that Petitioner failed to demonstrate counsel's performance was defective.  According to the

Colorado Court of Appeals,

> [T]he trial court found that appellate counsel spent several months
> reviewing the record and that she took extensive and meticulous
> notes while reviewing it, generating a document that exceeded 120
> pages in length.  Thereafter, she compiled a list of approximately
> 19 issues to be raised on appeal.  She testified that she thoroughly
> researched the issues and wrote an appellate brief that was 47
> pages long and contained 8 issues with numerous subcategories.
> The record supports these findings.

34

(#9-9 at 8.)  The Colorado Court of Appeals also noted that Petitioner "concede[d] that appellate counsel properly addressed the eight issues that were included in the brief" and that Petitioner "failed to allege and prove that the potential appellate issues were stronger or had a better chance of prevailing that the issues that were raised."  (*Id*. at 9.)

The Colorado Court of Appeals also determined that Petitioner could not demonstrate prejudice even if appellate counsel had been ineffective because the record and case law relied upon by the trial court supported its rulings.  More specifically, the Colorado Court of Appeals determined that a retired police officer receiving pension benefits is "not a compensated employee of a public law enforcement agency for purposes of disqualification" under Colorado law and that the police officer "explicitly stated that he could be fair and impartial."  (#9-9 at 11.)  With respect to the Safeway employee, the record reflected his statements that "he had no bias based on that employment" and "that he was able to listen to the evidence, that he understood the instructions regarding reasonable doubt and burden of proof, and that he was able to follow these instructions and the law."  (*Id*. at 12.)  The Colorado Court of Appeals concluded that Petitioner's ineffective assistance of appellate counsel claim based on the trial court's denial of two challenges for cause lacked merit because "there is no reasonable probability that [Petitioner] would have prevailed on appeal had appellate counsel pursued this issue, and thus he was not prejudiced by counsel's decision not to raise it."  (#9-9 at 12.)

Applying the required deference under § 2254(d)(1) to the resolution of this ineffective assistance of appellate counsel claim by the Colorado Court of Appeals, the Court concludes that the state court's decision is not contrary to or an unreasonable application of *Strickland*. Petitioner fails to present any clear and convincing evidence to overcome the presumption of

correctness that attaches to the factual findings of the Colorado Court of Appeals regarding appellate counsel's extensive efforts in researching and preparing Petitioner's opening brief on direct appeal.  *See* 28 U.S.C. § 2254(e)(1).  As noted above, appellate counsel need not and should not raise every conceivable claim, even if all of the claims are not frivolous.  *See Smith*, 528 U.S. at 288.  Simply put, Petitioner fails to demonstrate that his claim challenging the trial court's denial of two challenges for cause was "so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal."  *Cargle*, 317 F.3d at 1202. In other words, Petitioner fails to overcome the strong presumption that appellate counsel's conduct fell within the range of "reasonable professional assistance" because it was sound strategy under the circumstances.  *See Strickland*, 466 U.S. at 689.  He also fails to demonstrate that the determination by the Colorado Court of Appeals that direct appeal counsel's performance was not deficient was an unreasonable application of *Strickland*.

Furthermore, because Petitioner's arguments that the trial court erred in denying the challenges for cause to these two jurors under state law lack merit, the determination by the Colorado Court of Appeals that Petitioner fails to demonstrate any prejudice from counsel's alleged ineffectiveness also complies with federal law.  "[T]he question whether a venireman is biased has traditionally been determined through *voir dire* culminating in a finding by the trial judge concerning the venireman's state of mind" and "such a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *Wainwright v. Witt*, 469 U.S. 412, 428 (1985).  Petitioner presents no argument that demonstrates either of the jurors in question actually were biased against him.

Finally, to the extent Petitioner contends that the underlying claim appellate counsel

failed to raise was a constitutional claim that he was denied a fair and impartial jury, the Court finds that such a constitutional claim lacks merit as well.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant the right to an impartial jury. *See Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). If a "juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," he should be dismissed for cause. *Wainwright*, 469 U.S. at 424 (internal quotation marks omitted); *see also United States v. Scull*, 321 F.3d 1270, 1278 (10th Cir. 2003). However, in deciding whether the jury was impartial, the Court must focus on the jurors who ultimately deliberated and decided Petitioner's fate. *See Ross*, 487 U.S. at 86.

In the instant action, Petitioner's constitutional right to an impartial jury was not violated by the failure to dismiss two prospective jurors for cause. Petitioner cured any constitutional error that may have occurred when the trial court refused to remove the prospective jurors in question for cause by using peremptory challenges to remove them from the jury panel. *See id.* at 88. The fact that Petitioner was required to use peremptory challenges to achieve the goal of an impartial jury does not demonstrate that his constitutional rights were violated. *See id.* Therefore, because Petitioner does not contend that any of the jurors who actually determined his guilt were biased or impartial, his constitutional right to an impartial jury was not violated.

For all of these reasons, Petitioner's arguments regarding the trial court's failure to dismiss the two jurors in question for cause lack merit. As a result, his claim that appellate counsel was ineffective for failing to raise those arguments on direct appeal also lacks merit and is denied.

### 3. Other Acts Evidence (Claim Ten)

Petitioner contends in his final ineffective assistance claim that counsel failed to challenge the trial court's admission of prior act evidence (claim ten).  Petitioner specifically alleges that "[e]vidence of three separate robberies which were similar to that alleged to have been committed by [Petitioner] were presented at trial under C.R.E. 404(b)."  (#2 at 10.) However, Petitioner contends that, in all three prior cases, the charges against him either were dismissed or he was acquitted following a jury trial.

> In other words, the State allowed introduction of this other bad acts evidence where [Petitioner] was not identified as the robber, and the only similarity linking him to the other offenses was that the robber was black, wore sunglasses, and asked for money at a grocery store service counter requiring it to be put in a brown paper bag.

(#29 at 26.)  Petitioner maintains that the state court erroneously admitted the prior bad acts evidence in violation of state law and his right to a fair trial.

The procedural history of Petitioner's tenth claim for relief tracks the procedural history of his ninth claim discussed above.  Petitioner raised this ineffective assistance of counsel claim in his postconviction Rule 35(c) motion; the trial court denied relief; the trial court's order with respect to this claim was reversed by the Colorado Court of Appeals on Petitioner's first postconviction appeal; the claim was among the three claims remanded for a hearing; the claim was rejected by the trial court following an evidentiary hearing on remand; Petitioner filed a second postconviction appeal; and the Colorado Court of Appeals addressed the merits of the claim in Petitioner's second postconviction appeal.

In Petitioner's second postconviction appeal, the Colorado Court of Appeals determined that counsel's strategic decision not to raise this issue on direct appeal, based on counsel's

38

determination that the issue was not as strong as the other issues actually raised, did not amount

to defective performance.  The Colorado Court of Appeals also determined that Petitioner failed

to demonstrate prejudice because his claim challenging admission of the prior bad acts evidence

lacked merit.  The Colorado Court of Appeals reasoned as follows:

>Evidence of other crimes, wrongs, or acts is admissible to show motive, intent, plan, scheme, knowledge, opportunity, preparation, modus operandi, or the absence of mistake or accident.  CRE 404(b); *People v. Ihme*, 187 Colo. 48, 528 P.2d 380 (1974).

>To be admitted under CRE 404(b), evidence must meet the criteria set forth in *People v. Spoto*, 795 P.2d 1314 (Colo. 1990). Evidence of a prior act must (1) relate to a material fact, (2) be logically relevant, (3) have logical relevant independent of the intermediate inference of bad character prohibited by CRE 404(b), and (4) have probative value that is not substantially outweighed by the danger of unfair prejudice.  *Id.* at 1318.

>The CRE 404(b) evidence of three previous robberies was admitted in this case to show modus operandi and identification. The previous robberies and the offense with which [Petitioner] was charged were committed in a similar manner.  In each instance, a black male, subsequently identified as [Petitioner], walked up to the service counter of a grocery store during daylight hours, asked employees to put money in a folded brown paper bag, showed a gun in his waistband, and usually wore dark glasses inside the store.

>The trial court determined the evidence was highly relevant and probative in showing modus operandi and identification, and was not so prejudicial as to inject bias, sympathy, anger, or shock into the proceedings.  See People v. Gibbens, 905 P.2d 604 (Colo. 1995).  We agree with the trial court's determination.  Therefore, there was no reasonable probability that [Petitioner] would have prevailed on this issue, had it been raised.

>Thus, even if we were to find appellate counsel's performance defective, [Petitioner] failed to establish that he suffered any prejudice.  Accordingly, we conclude the trial court properly denied [Petitioner's] claim of ineffective assistance of

appellate counsel.

(#9-9 at 13-14.)

Although the Colorado Court of Appeals refers to admission of evidence of three prior robberies to show modus operandi and identification, the Court notes that evidence of only one prior robbery was admitted at Petitioner's second trial.  The other prior robberies, evidence of which was admitted at Petitioner's original trial, were not mentioned at Petitioner's second trial.

For the same reasons discussed above in the context of Petitioner's claim that counsel on direct appeal should have challenged the trial court's denial of two challenges for cause, Petitioner again fails to demonstrate that the Colorado Court of Appeals unreasonably applied *Strickland* in determining that direct appeal counsel's performance was not deficient.  In short, Petitioner again fails to overcome the strong presumption that appellate counsel's decision not to challenge admission of the prior bad acts evidence fell within the range of "reasonable professional assistance" because it was sound strategy under the circumstances.  *See Strickland*, 466 U.S. at 689.  Petitioner also fails to demonstrate that the determination by the Colorado Court of Appeals that direct appeal counsel's performance was not deficient was an unreasonable application of *Strickland*.  Therefore, Petitioner also is not entitled to relief on his tenth claim.

**H.  Claim Eleven**

Petitioner finally claims that he was denied a fair trial when the trial court refused to appoint a special prosecutor.  Respondents argue that this claim is unexhausted and procedurally barred.  In his Traverse, Petitioner concedes that the claim is unexhausted and agrees to voluntarily withdraw the claim.  Accordingly, the Court need not consider the merits of claim

eleven.

For the reasons discussed above, it is ORDERED that Petitioner Roscoe Ford's

Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#2) is **DENIED**.  It is

FURTHER ORDERED that no certificate of appealability will issue because Petitioner has not

made a substantial showing of the denial of a constitutional right.  The Clerk of the Court shall

close this case.

DATED this 16th day of June, 2011.

BY THE COURT:

Marcia S. Krieger
United States District Judge